**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE GEO SPECIALTY CHEMICALS, INC., *et al.*,<br><br>Debtor/Defendant. | Civil Action Nos.: 16-8405/16-8463 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

These matters come before the Court by way of two separate Motions to Withdraw the Bankruptcy Reference as it pertains to Debtor/Defendant GEO Specialty Chemicals, Inc. ("GEO"). The first Motion was filed by the Direct Purchaser Plaintiffs ("DPP") in the *In re Liquid Aluminum Sulfate Litigation* (Civ. No. 16-md-2687). The other Motion was filed by the Indirect Purchaser Plaintiffs ("IPP") in that same matter. GEO has submitted a joint opposition to both Motions, to which both groups of Plaintiffs have replied. The subject matter of the Motions are identical and the arguments are very similar. Therefore, the Court considered both applications jointly herein. The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies both Motions to Withdraw the Bankruptcy Reference as it pertains to GEO.

## I.    BACKGROUND[1]

### A.    The Parties

GEO is a manufacturer of liquid aluminum sulfate ("LAS") and one of numerous defendants in the *In re Liquid Aluminum Sulfate Litigation* ("MDL"). *See In re Liquid Aluminum Sulfate Litigation* (Civ. No. 16-md-2687). Both of the Consolidated Amended Complaints in the MDL allege that GEO conspired with other manufacturers of LAS to allocate customers not competing for the business of other manufacturers' historic customers between 1997 and 2011. DPP are various municipalities and utility companies from around the nation who claim they were harmed because they paid more for LAS, a product necessary in their industry, due to the collusion. *See* MDL ECF No. 220. Similarly, the IPP claim they were indirect purchasers of LAS and were also harmed by the Defendants' actions. *See* MDL ECF No. 242.

### B.    Procedural Posture and Pertinent Facts

As noted above, GEO is a company engaged in the production of LAS. In 2004, GEO filed for Bankruptcy Protection under Chapter 11. *See In re GEO Specialty Chemicals, Inc.*, Bankr. No 04-19148. On December 20, 2004, the Bankruptcy Court entered a Discharge Order confirming GEO's plan of reorganization. *Id.* at ECF No. 1014. The effective date of the plan of reorganization was set for December 31, 2014. *Id.*

GEO was indicted for its involvement in the scheme, and ultimate pled guilty to a one-count information in violation of 15 U.S.C. § 1 on July 16, 2016. *See USA v. GEO Speciality Chemicals, Inc.*, Crim. No. 16-290 (JLL). The Court found that "from at least as early as 1997 and continuing until approximately February of 2011, [GEO] and its co-conspirators entered into

---

[1] This background is derived from the parties' collective briefs as well as information from both Plaintiffs' Consolidated Amended Complaints (ECF Nos. 220, 242) in the *In re Liquid Aluminum Sulfate Litigation*.

and engaged in a combination and conspiracy to suppress and eliminate competition in the sale and marketing of liquid aluminum sulfate by agreeing to rig bids and allocate customers for, and to fix, stabilize and maintain the price of liquid aluminum sulfate sold to municipalities and pulp and paper companies in the United States." *Id.* Meanwhile, various entities began filing civil actions seeking to recover damages stemming from the alleged antitrust activities. This Court then established *In re Liquid Aluminum Sulfate Litigation* MDL in order to better manage the actions. At the direction of this Court, both DPP and IPP filed Consolidated Amended Complaints where various Plaintiffs who shared the same nexus of facts were included.

Thereafter, GEO filed a Motion in the Bankruptcy Court to reopen its case for the limited purpose of enforcing the Discharge Order thereby limiting the damages it may be liable for to any antitrust actions that occurred after the effective date of same. GEO has also moved before this Court to dismiss the Consolidated Amended Complaints based on the fact that the Discharge Order precludes both DPP and IPP from recovering damages. Finally, DPP and IPP filed the subject Motions seeking to have this Court withdraw the Bankruptcy reference in order to make a determination as to whether the Discharge Order bars recovery from GEO.

## II.   LEGAL STANDARD

This Court has original, but not exclusive jurisdiction over all bankruptcy proceedings. 28 U.S.C. § 1334(b). District Courts have the authority to refer any and all cases under Title 11 to "the bankruptcy judges for the district." 28 U.S.C. § 157(a). The District of New Jersey has had a standing order to refer all Title 11 proceedings to the Bankruptcy Court. Although district courts often prefer that bankruptcy courts hear all proceedings arising out of an action originating in such courts, 28 U.S.C. § 157(d) permits a district court to "withdraw, in whole or in part, any case or

proceeding referred under this section, on its own motion or on timely motion of any party, for

cause shown." *Id.* Thus, on motion of a party, the party must show "cause" before a District Court

withdraws the reference. *In re System Freight, Inc.*,1991 U.S. Dist. LEXIS 2674, 1991 WL 33150

(D.N.J. 1991).

Reference withdrawal can be either mandatory or permissive. 28 U.S.C. § 157. Mandatory

withdrawal of the reference for is required when resolution of the case or issue would require

"substantial and material consideration of non-bankruptcy law" by the Bankruptcy Court. *See*

*Perkins v. Verma*, 2011 U.S. Dist. LEXIS 124793 (D.N.J. Oct. 27, 2011); *U.S. v. Wood*, 161 B.R.

7, 201 (D.N.J. 1993). "Mandatory withdrawal is to be applied narrowly to ensure bankruptcy cases

are litigated in the bankruptcy courts and to prevent § 157(d) from becoming an 'escape hatch'

from litigating cases under the Bankruptcy Code." *Perkins*, *supra* at *9 (quoting *Official Comm.*

*Of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 221 (D.N.J.

2003))(additional citations omitted).

For permissive withdrawal of the reference the Court must first ascertain if the proceeding

is a "core" or "non-core" matter. *Orion Pictures Corp. v. Showtime Networks*, 4 F.3d 1095, 1101

(2d Cir. 1993). The distinction between "core" and "non-core" is the single most important factor

in considering whether permissive withdrawal is warranted since the language of 28 U.S.C. §

157(d) "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated

in the Bankruptcy Court." *Kohn v. Haymount, LP (In re Int'l Benefits Group, Inc.)*, 2006 U.S.

Dist. LEXIS 58487, *5 (D.N.J. Aug. 21, 2006); *Newark Watershed Conservation & Dev. Corp. v.*

*Watkins-Brashear*, 2016 U.S. Dist. LEXIS 90280, *5 (D.N.J. July 11, 2016). The determination

as to dischargeability of particular debts and obligations to discharges are deemed to be "core"

4

matters. *See* 28 U.S.C. §§ 157(b)(2)(I) and (J).   Next, the Court must consider the following factors when determining whether cause exists for permissive withdrawal: 1) uniformity in bankruptcy administration; 2) reducing forum shopping and confusion; 3) fostering the economical se of the debtors' and creditors' resources; 4) expediting the bankruptcy process; and 5) the timing of the request for withdrawal. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

## III.   ANALYSIS

Both DPP and IPP move before this Court, on separate applications, seeking withdrawal of the bankruptcy reference as it pertains to GEO.   The movants advance nearly identical arguments in support of both mandatory and permissive withdrawal.   The Court will address each basis for withdrawal of the bankruptcy reference separately below.

### A.  Mandatory Withdrawal

The Court finds that mandatory withdrawal of the bankruptcy reference is not appropriate here.  Both movants argue that resolution of GEO's Motion to Reopen the Bankruptcy and Enforce the Discharge Order will require the Bankruptcy Court to determine whether GEO is jointly and severally liable for the actions of its co-conspirators by applying and interpreting antitrust law. DPP Mov. Br. at 4; IPP Mov. Br. at 6.  However, this assertion is incorrect.  Rather, the Bankruptcy Court has only been asked to review whether the movants' claims for damages accrued prior to the effective date of the Plan of Reorganization and therefore barred.  This can be accomplished without a determination as to the merits of DPP & IPP's claims.  "Mere incidental reference to non-bankruptcy federal law is insufficient ... to trigger mandatory withdrawal. The consideration of non-bankruptcy law must be 'substantial and material' before Section 157(d) compels withdrawal." *Federated Dep't Stores v. United States EPA (IN re Federated Dep't Stores, Inc.,*

189 B.R. 142, 144 (S.D. Ohio 1995). Thus, the Court concludes that the Bankruptcy Court can resolve the application before it without substantial and material consideration of non-bankruptcy federal law, and the Motions to for mandatory withdrawal of the bankruptcy reference are hereby denied.

### B. Permissive Withdrawal

The Court also finds that permissive withdrawal of the bankruptcy reference is inappropriate in this case. First, as noted above, pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J) the determination as to dischargeability of particular debts and obligations to discharges are deemed to be "core" matters. GEO's Motion to Reopen and Enforce the Discharge Order falls squarely within that definition. Hence, GEO's Motion before the Bankruptcy Court is a core matter, which presumptively should be decided by the Bankruptcy Court.

The remaining five factors regarding when permissive withdrawal is applicable also weigh in favor of denial. First, both efficiency and uniformity in bankruptcy administration is achieved when the Bankruptcy Court determines the outcome of core issues. *See Orion Pictures Corp.*, 4 F.3d at 1101. Allowing the Bankruptcy Court to determine the scope and applicability of its own orders achieves this goal. Thus, the first factor weighs in favor of having the Bankruptcy Court decide GEO's Motion to Reopen without intervention from this Court.

This same logic applies to the forum shopping factor. DPP and IPP argue that GEO's Motion before the Bankruptcy Court and its Motion to Dismiss before this Court exhibits GEO's attempt to find a more favorable forum. Yet, that is not the case. GEO is merely seeking to have the Bankruptcy Court that issued the Discharge Order interpret and apply it, and asking the District Court to dismiss any claims which are deemed barred pursuant to the Discharge Order. Thus,

while it is more efficient and uniform to have the Bankruptcy Court handle GEO's Motion, GEO's filing of two separate and distinct motions is certainly is not an attempt at forum shopping.

The next factor to be considered is the efficient use of the parties' resources. DPP avers that it would be inefficient to let the Bankruptcy Court determine its own Discharge Order since any decision by the Bankruptcy Court is likely to be appealed and the appeal would be heard by this Court. DPP Mov. Br. at 8. This is the same argument that was raised, and rejected, in the *US Airways* case. *In re U.S. Airways Grp.*, 296 B.R. 673, 683 n. 22 (E.D. Va. 2003)(citing 28 U.S.C. § 158(a)). There, the Court held that the possibility that the parties may be required to litigate the matter twice, once before the Bankruptcy Court and once before the District Court on appeal, does not necessarily mean it is a more efficient use of the parties' resources to simply have the District Court decide a core proceeding every time, as this would frustrate the purpose of the reference to the Bankruptcy Court. *Id.* The same logic applies here as this is a core proceeding better suited for the Bankruptcy Court to decide. Accordingly, this argument is not persuasive and weighs in favor of denying the Motions.

Similarly, the "expedition of the bankruptcy process" factor also weighs in favor of denial. While IPP does not address this factor, DPP concedes that "GEO's motion to enforce the Discharge Order will not affect the administration of the estate." DPP Mov. Br. at 8. Rather, it argues that "having the Bankruptcy Court decide GEO's motion would prolong the final resolution of the issue, *because any appeal of the outcome of the motion to enforce would be heard by the District Court.*" *Id.* The Court disagrees with this argument since this factor is aimed at expediting the administration of a debtor's bankruptcy estate and not any appeal that may flow therefrom. Moreover, application of DPP's logic would essentially result in permissive withdrawal of the

reference in every bankruptcy case "since all dispositive matters resolved by the bankruptcy court may be appealed to the district court." *U.S. Airways*, 296 B.R. at 683 (citing 28 U.S.C. § 158 (a)). Thus, the Court finds that this factor also weighs in favor of denying the Motions to Withdraw the Bankruptcy Reference.  Finally, Plaintiffs assert that their application was timely and GEO does not dispute same.

In conclusion, permissive withdrawal is not appropriate in this matter.  The issue to be decided by the Bankruptcy Court is the interpretation and application of its own Discharge Order. Such a determination is a core proceeding which is best left for the Bankruptcy Court's determination.  Additionally, four out of the five factors to be considered by this Court weigh in favor of denying the Motions to Withdraw.  Accordingly, both Motions for Permissive Withdrawal are denied.

## CONCLUSION

For the aforementioned reasons, DPP's Motion to Withdraw the Bankruptcy Reference and IPP's Motion to Withdraw the Bankruptcy Reference are hereby denied.

DATED: January 5, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE